**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FRANKLIN ARMORY HOLDINGS INC., a Nevada Corporation; and FRANKLIN ARMORY INC., a Nevada Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT JOSEPH GALLAGHER, an individual; and IN THE FIELD DEFENSE, a sole proprietorship, <br><br> Defendants. | CIVIL ACTION NO. 2:20-CV-5681 |

**FRANKLIN ARMORY HOLDINGS INC. AND FRANKLIN ARMORY INC.'S
OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................2

III.  LEGAL ARGUMENT ............................................................................................6

   A.  Defendants Failed to Comply with Their Meet and Confer Obligations............................6

   B.  The Risk of Irreparable Harm to Plaintiffs Outweigh the Marginal Benefits
       that a Stay Could Provide. ...............................................................................7

      1.  Plaintiffs Will Suffer Undue Prejudice and Irreparable Harm if a Stay of
          this Litigation is Imposed................................................................................8

         a.  Plaintiffs Will Be Irreparably Harmed if Defendants are Permitted to
             Continue Selling their Infringing Products..................................................9

         b.  The Imposition of a Stay Would Unduly Prejudice Plaintiffs' Ability
             to Litigate this Action. ............................................................................12

         c.  A Stay Would Provide Defendants with an Unfair Tactical Advantage. ...................13

      2.  There is Minimal Overlap of Issues Between the '461 Patent Reexamination
          and this Proceeding. ..................................................................................14

      3.  The Issuance of a Stay Will Not Significantly Increase Judicial Efficiency
          for Either the Parties or the Court. ...............................................................16

IV.   CONCLUSION......................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Vent, Inc. v. Owens Corning Corp.*,
   No. 10–1699, 2012 WL 1607145 (W.D. Pa. May 8, 2012)................................................9, 10

*Arkema Inc. v. Honeywell Int'l, Inc.*,
   No. 10-CV-2886, 2013 WL 5356844 (E.D. Pa. Sept. 25, 2013) ..............................7, 9, 14, 17

*Cooper Notifications, Inc. v. Twitter, Inc.*,
   No. 09–865–LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010).............................................11

*Davol, Inc. v. Atrium Medical Corp.*,
   No. 12–958–GMS, 2013 WL 3013343 (D. Del. June 17, 2013) ...........................................11

*Destination Maternity Corp. v. Target Corp.*,
   12 F. Supp. 3d 762 (E.D. Pa. Mar. 24, 2014) .................................................... 9, 13

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988).................................................................14

*Innovative Off. Prod., Inc. v. Spaceco, Inc.*,
   No. CIV.A. 05-4037, 2008 WL 4083012 (E.D. Pa. Aug. 28, 2008) .............................. *passim*

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).............................................................................7

*Neste Oil Oyl v. Dynamic Fuels, LLC*,
   No. 12–662–GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) .........................................10, 17

*Pro-Troll, Inc. v. Shortbus Flashers, LLC*,
   No. 16-CV-04062-VC, 2016 WL 11432003 (N.D. Cal. Dec. 23, 2016)................................13

*In re Sacramento Mun. Util. Dist.*,
   395 Fed. Appx. 684 (Fed. Cir. 2010) ......................................................................7

*Slip Track Systems, Inc. v. Metal Lite, Inc.*,
   159 F.3d 1337, 48 USPQ2d 1055 (Fed. Cir. 1998) .............................................14

*Traffic Info., LLC v. Huawei Techs. Co., Ltd.*,
   No. 2:10-CV-145, 2012 WL 12892435 (E.D. Tex. May 30, 2012) ......................................... 8

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
   Civ. No. 10–503–SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010) .................................8, 16

**Statutes and Rules**

35 U.S.C. § 102 ................................................................................................................4, 5, 15

35 U.S.C. § 103 .............................................................................................................2, 4, 5, 15

35 U.S.C. § 112 ..............................................................................................................4, 15, 17

37 C.F.R. § 1.116 ........................................................................................................................16

Fed. R. Civ. P. 12 .........................................................................................................................6

Fed. R. Civ. P. 16 .....................................................................................................................3, 6

Fed. R. Civ. P. 26(f) .....................................................................................................................3

Fed. R. Civ. P. 32(b)(2)(A)(ii)-(vii) ............................................................................................6

**Other**

Model Order Governing Proceedings .........................................................................................15

USPTO's Manual of Patent Examination Procedure ....................................................................3

Plaintiffs Franklin Armory Holdings Inc. and Franklin Armory Inc. (collectively "Plaintiffs" or "Franklin"), by and through their attorneys of record, hereby respond to Defendants Robert J. Gallagher and In The Field Defense's (n/k/a In Field Defense, LLC, and together with Mr. Gallagher, "Defendants" or "ITFD") Motion to Stay Litigation ("Motion").

## I.   INTRODUCTION

Defendants' motion comes nearly six months after Defendants first informed Plaintiffs of their intent to seek a stay due to the still-pending '461 reexamination.  Two months after the Court indicated it was not inclined to stay this action, Defendants finally decided to file their motion in an effort to stay the litigation after the parties have already invested significant resources in this proceeding and are currently in the middle of claim construction.  According to Defendants, a stay is necessary because "[a]bsent a successful appeal, [the USPTO's August 20, 2021] final rejection will moot all of the issues in this case."  *See* Dkt. No. 45-1, at p. 7.  Notwithstanding the fact that this assertion is entirely contrary to law (as discussed herein), Defendants fail to provide any meaningful analysis of the prejudice that a stay would impose on Plaintiffs and the probable effect that the '461 reexamination will have on this case.

A proper consideration of the relevant factors shows that the irreparable harm that Plaintiffs will sustain substantially outweighs the marginal benefits that a stay may provide to the Court and parties in this litigation.  For these reasons, the Court should deny the Motion.  At a minimum, any consideration of a stay should be delayed until the parties have completed claim construction proceedings and Plaintiffs have had a full and fair opportunity to obtain and preserve Defendants' testimony regarding their prior conception allegations.  Finally, if the Court is so inclined as to grant the stay, the Court should deny Defense Counsel's Motion to Withdraw (Dkt. No. 39)

because such a stay would provide sufficient time for Defendants and their counsel to resolve their payment issues.

## II.     FACTUAL BACKGROUND

On November 13, 2020, Plaintiffs filed the Complaint asserting claims for direct and indirect infringement of U.S. Patent No. 10,393,461 ("the '461 Patent") against Defendants.  Dkt. No. 1 ("Complaint").     Thereafter, Defendants sought several extensions to respond to the Complaint.  On March 3, 2021, the parties met and conferred regarding Defendants' intent to file a motion to dismiss, which they ultimately filed on March 4, 2021.  *See* Dkt. No. 7.   Defendants apparently used this additional time to prepare a Request for Ex Parte Reexamination of the '461 Patent with the U.S. Patent and Trademark Office ("USPTO"), which they filed on March 26, 2021.  *See* Dkt. No. 45-1 ("Defendants' Brief in support of Motion to Stay"), at p. 1, Exh. A. Defendants' request argued that the '461 Patent claims were invalid under 35 U.S.C. § 103 over the combination of U.S. Patent Nos. 8,667,881 ("Hawbaker") and 9,719,744 ("Horch"). Defendants failed to inform Plaintiffs of their intent to seek reexamination, and finally did so after-the-fact on April 9, 2021.  Declaration of Jeffrey Ratinoff ("Ratinoff Decl."), at ¶ 3.

On April 22, 2021, the USPTO instituted reexamination proceedings stating that "a substantial new question of patentability" existed with respect to the '461 Patent.  Ratinoff Decl., ¶ 4.  On April 23, 2021, Defendants informed Plaintiffs that they intended to file a motion for a stay of the litigation pending the reexamination, and asked whether Plaintiffs would join or not oppose.   Plaintiffs informed Defendants that they would consider this request and provide Defendants with a response.  *Id*., at Exh. 1.

On April 28, 2021, Defendants filed an Amended Answer and Counterclaims that alleged, *inter alia*, the '461 Patent was invalid in view of Hawbaker, Horch, and U.S. Patent No. 2,027,950

("Young").  Dkt. No. 17 ("AAC"), at p. 14, ¶ 26; *id*. at p. 23, ¶ 14.  Defendants further alleged that

the '461 Patent was invalid because Mr. Gallagher previously conceived of the invention of the

'461 Patent in 2010, and sold the invention to five unidentified individuals sometime between

2011 and 2019.[1]  AAC, pp. 22-23, ¶ 8-9.

On May 14, 2021 and May 28, 2021, the parties met and conferred pursuant to Federal

Rule of Civil Procedure 26(f).  Dkt. Not. 45-1, p. 2.  During the call, Defendants requested that

this matter be stayed pending the results of the pending reexamination.  Dkt. No. 25 ("Rule 26(f)

Report"), pp. 9, 11-12.  Plaintiffs disagreed that a stay was necessary and indicated that Defendants

would need to file a formal motion with the Court as they previously indicated they would be

filing.  *Id*.

On June 3, 2021, the USPTO issued a first <u>non-final</u> Office Action rejecting all claims of

the '461 Patent in view of the combination of Hawbaker and Horch.  Notably, the non-final Office

Action failed to provide any analysis for how a person of ordinary skill in the art could have

combined Hawbaker and Horch in order to achieve the claimed invention as required by the

USPTO's Manual of Patent Examination Procedure ("MPEP") § 2100.  Dkt. No. 45-2

("Certification of Richard Gilly in support of Defendants' Motion to Stay"), Exh. C; MPEP

§ 2144.08.  The non-final rejection further failed to consider any secondary considerations of non-

obviousness despite the MPEP requiring the consideration thereof.  *Id*.

On June 17, 2021, the parties appeared for the Rule 16 conference before the Court.  During

the conference, Defendants raised the issue of staying the litigation, and the Court indicated that it

did not want to stay the proceedings at that time.  Ratinoff Decl., ¶ 5, Exh. 2 at 3:6-18; 6:3-18.  At

the status conference, Plaintiffs also raised their concerns regarding Defendants' prior derivation

---

[1] On September 1, 2021, Defense Counsel informed Plaintiffs that he did not know the identities
of these individuals prior to making this allegation.  *See* Ratinoff Decl., ¶ 12.

defense and sought leave to conduct discovery on this defense prior to claim construction. *Id*., Exh. 2 at 5:9-6:14, 7:11-18. While the Court denied Plaintiffs' request for early discovery, it did make clear that Defendants were required to produce all evidence supporting their derivation defense with Defendants' Preliminary Invalidity Contentions. *Id*., Exh. 2 at 17:14-18:5.

On July 30, 2021, Plaintiffs filed their response to the non-final Office Action addressing, *inter alia*, the Examiner's failure to provide any analysis for how a person of ordinary skill in the art could have combined Hawbaker and Horch in order to achieve the invention of the '461 Patent as well as the Examiner's failure to consider any secondary considerations of nonobviousness. Ratinoff Decl., ¶ 6, Exh. 3.

On August 5, 2021, Defendants served their Preliminary Invalidity Contentions. Ratinoff Decl. ¶ 7. Notably, Defendants' invalidity contentions failed to identify any prior art to support an argument under 35 U.S.C. §§ 102, 103, but instead relied solely upon 35 U.S.C. § 112. Dkt. No. 49-1, Exh. B, at pp. 1-2. Defendants also conceded in the invalidity contentions that there is no documentary evidence to support their prior derivation claims. *Id*. at p. 3.

On August 6, 2021, Plaintiffs wrote to Defendants and requested a time to meet and confer regarding Defendants' failure to assert any 35 U.S.C. §§102, 103 defenses in their invalidity contentions. Ratinoff Decl., ¶ 7, Exh. 4. In view of Defendants' failure to assert the previously identified prior art, Plaintiffs requested that Defendants agree to withdraw their previously asserted invalidity theories based upon the Hawbaker, Horch, Young, and prior derivation references. *Id*. Alternatively, Plaintiffs requested that they explain why such defenses were not included in their invalidity contentions. Despite repeated efforts by Plaintiffs, Defendants refused to clarify their invalidity position and did not respond to Plaintiffs' requests to meet and confer on this issue. *Id*.

On August 20, 2021, the USPTO issued a final Office Action in the '461 Patent reexamination proceeding.  In that Office Action, the Examiner again rejected the '461 Patent claims and articulated for the first time the basis for this determination.  Dkt. No. 45-2, Exh. D, at pp. 12-14.  The Office Action further set a two-month period for Plaintiffs to provide a written response to the Office Action.  *Id.* at p. 19.  Thus, it was clearly not "final" as a practical matter.

On August 25, 2021, Defendants filed the present Motion to Stay Proceedings pending the resolution of the '461 Patent reexamination.  This was the first time that Defendants raised the issue of a stay since the June 17, 2021 status conference.  Defendants made no attempt to meet and confer with Plaintiffs' prior to filing the Motion.  Ratinoff Decl., ¶ 8.

On August 26, 2021, Defendants emailed Plaintiffs' Counsel to offer—for the first time since Plaintiffs' August 6, 2021 correspondence—to meet and confer regarding Plaintiffs' concerns with Defendants' invalidity contentions.  Ratinoff Decl., ¶ 9, Exh. 5.  On August 27, 2021, Plaintiffs responded and proposed times when Plaintiffs were available to meet.  *Id.*

On September 1, 2021, the parties met and conferred to address Plaintiffs' concerns regarding Defendants' invalidity contentions as well as Defendants' complaints regarding Plaintiffs' Preliminary Infringement Contentions.  Ratinoff Decl., ¶¶ 10-13.  During the call, Defendants stated their intention to maintain their invalidity defenses under Sections 102 and 103 (including defenses based upon the previously identified prior art) notwithstanding the fact that Defendants failed to identify such grounds in their invalidity contentions.  *See id.*, ¶¶ 10-13, Exh. 6; *see also* Dkt. No. 52-1, ¶¶ 2-7.

On September 2, 2021, Defendants filed their Reply in support of Defense Counsel's Motion to Withdraw as Counsel where they argued that, "[s]ince the USPTO Reexamination has rejected all claims of the '461 Patent as invalid over certain prior art, Defendants expressly omitted

any invalidity contentions based on prior art they are aware of, and thus did not need to provide

claim charts in their Preliminary Invalidity Contentions." Dkt. No. 49, pp. 8-9.

Plaintiffs have not yet responded to the final Office Action in the reexamination

proceeding. Based on the date of the Office Action, Plaintiffs have until October 19, 2021 to file

such response that may include additional evidence and/or claim amendments supporting

Plaintiffs' validity positions. Dkt. No. 45-2, Exh. D, at p. 19. At minimum, Plaintiffs intend to

provide a substantive response, and may also offer amendments to existing claims or additional

claims.

## III.   LEGAL ARGUMENT

### A.   Defendants Failed to Comply with Their Meet and Confer Obligations.

The Court's Standing Order requires the parties to meet and confer before filing a motion

with the Court. *See* Judge Kenney's Standing Order on Policies and Procedures for Counsel, at

p. 22 ("In general, Judge Kenney expects counsel to bring matters to his attention only after they

have been discussed with opposing counsel."). A party's failure to comply with a scheduling order

or other pretrial order of the Court may warrant sanctions including, for example, the entry of an

adverse determination. Fed. R. Civ. Proc. 16(f), 32(b)(2)(A)(ii)-(vii); *see also* Judge Kenney's

Standing Order on Policies and Procedures for Counsel, at pp. 7-8 ("The Court will deny any

motion [pursuant to Fed. R. Civ. Proc. 12(b)(6), (e), or (f)] that fails to confirm with th[e meet and

confer] requirements.").

Nonetheless, Defendants failed to meet and confer with Plaintiffs prior to filing the instant

motion. As Defendants readily admit, the only time the parties met and conferred on this issue

was before the July 17, 2021 status conference. *See* Dkt. No. 45-1, at p. 2. Unfortunately, as

evidenced by Defense Counsel's repeated failures to timely respond to Plaintiffs' requests to meet

and confer on other issues in this case, this is a common pattern and practice for Defendants.  *See* Ratinoff Decl. ¶ 7, Exh. 4.

Due to Defendants' repeated failures to comply with the stated policies of this Court, denial of stay is appropriate here on procedural grounds.  Although denial of the Motion on this basis alone may seem a harsh remedy, it is necessary to ensure Defendants take seriously their obligation to adhere to the policies and procedures established by this Court.  In any event, as addressed below, a stay is not proper here as the risk of undue prejudice to Plaintiffs clearly outweighs the marginal benefits that a stay may provide to the Court and the parties.

**B.      The Risk of Irreparable Harm to Plaintiffs Outweigh the Marginal Benefits that a Stay Could Provide.**

A district court has the inherent authority to stay proceedings.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In deciding whether to stay a proceeding, the Court "must weigh the competing interests and maintain an even balance."  *Id*. at 254-55; *see also*, *Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-CV-2886, 2013 WL 5356844, at *2 (E.D. Pa. Sept. 25, 2013) (same).  The Court "must first identify a pressing need for the stay, and then balance those interests against interests frustrated by the action."  *In re Sacramento Mun. Util. Dist.*, 395 Fed. Appx. 684, 687-688 (Fed. Cir. 2010) (citations omitted).

This determination is necessarily fact-dependent; however, courts typically consider three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *Innovative Off. Prod., Inc. v. Spaceco, Inc.*, No. CIV.A. 05-4037, 2008 WL 4083012, at *2 (E.D. Pa. Aug. 28, 2008) (quoting

*Stryker Trauma,* 2008 WL 877848, 1 (D.N.J., 2008).); *see also*, *Traffic Info., LLC v. Huawei Techs. Co., Ltd.*, No. 2:10-CV-145, 2012 WL 12892435, at *2 (E.D. Tex. May 30, 2012).  As explained below, the likelihood of immediate and irreparable harm to Plaintiffs clearly outweighs the marginal benefits that a stay would provide in this case.

**1.      Plaintiffs Will Suffer Undue Prejudice and Irreparable Harm if a Stay of this Litigation is Imposed.**

Courts recognize that "reexamination is an arduous process fraught with the potential for multiple appeals."  *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, Civ. No. 10–503–SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) (internal citations, quotations omitted); *Ever Win*, 902 F. Supp. 2d at 509 ("PTO reexaminations can result in lengthy delays which can hinder a plaintiff's ability to obtain timely resolution regarding its allegations of patent infringement.").  According to the most recent September 30, 2020 data published by the USPTO, the pendency of ex parte reexaminations from filing date to reissue certificate (excluding subsequent appeals) is, on average, 25.7 months.[2]  Based on the March 26, 2021 filing date, it is likely that that the reexamination will not be resolved until May 2023, not including additional time for any necessary appeal.[3]  Thus, in assessing prejudice, the Court should consider the likely effect that this delay would have on Plaintiffs.  *See*, *e.g.*, *Innovative*, 2008 WL 4083012, at *2 (considering USPTO

---

[2]  *See* USPTO: Ex Parte Reexamination Filing Data (Sept. 30, 2020) (available at: https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up_21Q1.pdf ).

[3]  Defendants cite *Traffic Info.* for the proposition that, as of 2012, "the BPAI affirms, at least in part, 71% of all final rejections." Dkt. No. 45-1, at p. 7, n. 2.  As *Traffic Info* explains, this statistic was provided by the parties in that suit.  *Traffic Info.*, 2012 WL 12892435, at *3.  It is unclear, however, whether the data presented was limited to ex parte reexamination or if it included other trials such as the now-discontinued inter partes reexamination.  Additionally, the fact that 71% of rejections are affirmed ***in-part*** suggests that, in many cases, rejections are partially reversed.  Taken together with the fact that this data predates the AIA and creation of the PTAB, this statistic should receive little weight, if any.

8

reported data regarding the average length of reexamination proceedings in evaluating the prejudicial impact of a stay); *Arkema*, 2013 WL 5356844, at *4 (same).

a. **Plaintiffs Will Be Irreparably Harmed if Defendants are Permitted to Continue Selling their Infringing Products.**

Courts are reluctant to grant stays where, as here, the parties are direct competitors. *See Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 768 (E.D. Pa. Mar. 24, 2014) ("[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."). The likelihood that Plaintiffs will suffer undue prejudice by Defendants' continued infringement is particularly notable in view of the fact that Plaintiffs (together with Fostech, Inc., a licensee of the '461 Patent) hold a 99% market share for the accused binary trigger systems. Declaration of Jay Jacobson ("Jacobson Decl.") at ¶¶ 3-4, Exh. 1 ("Market Share Report"); *see Destination Maternity*, 12 F. Supp. 3d at 768 (suggesting that the absence of competitors in the market may support the assertion of undue prejudice because of loss of market value); *cf. Air Vent, Inc. v. Owens Corning Corp.*, No. 10–1699, 2012 WL 1607145, at *2 (W.D. Pa. May 8, 2012) ("[T]he fact that there are other competitors in the market undermines [the] assertion of undue prejudice because of loss of market value."). Plaintiffs' controlling market share is directly attributed to their patents covering this technology (including the '461 Patent), and Defendants' continued infringement thus poses an imminent threat to Plaintiffs' established position within the consumer retail market for binary fire trigger products. Jacobson Decl. ¶¶ 5, 7.

The economic harm that a stay would impose upon Plaintiffs is particularly grievous in view of Defendants' apparent financial insolvency, as evidenced by Defendants' inability (or unwillingness) to pay their attorneys' fees. *See Innovative*, 2008 WL 4083012, at *3 (denying stay

9

and explaining that the defendant's insolvency means "it is possible that [the plaintiff] will be left with no recourse and a long term loss of market share and revenue"). Notably, Defense Counsel indicated that Defendants' insolvency became an ongoing issue in April 2021 around the time they first threatened to file a motion. Dkt. No. 39-2, ¶¶ 3-4. As of the filing of Defense Counsel's motion to withdraw on August 19, 2021, Defendants owed over $55,000 in fees, and "have indicated that they are unable to pay that amount." *See id.*, ¶ 5. That amount due and owing has undoubtedly increased with the filing of the present motion and subsequent claim construction related disclosures.

Thus, if Plaintiffs' patent is ultimately found to be valid and infringed, it is unlikely that Plaintiffs will be able to recover damages for the time that the reexamination was pending considering the Defendants' financial position. *Cf. Air Vent*, 2012 WL 1607145, at *3 (finding no undue prejudice because "[t]here is no legitimate question that [defendant] could pay a damages judgment against it"). As in *Innovative*, a stay of these proceedings would leave Plaintiffs with no recourse and a long-term loss of market share and revenue as Defendants continue to sell their infringing products.

Contrary to Defendants' assertions, Plaintiffs' choice not to seek a preliminary injunction does not negate the conclusion that Plaintiffs will be irreparably harmed by Defendants' continued infringement. *See Innovative*, 2008 WL 4083012, at *3 (rejecting argument that plaintiff's failure to seek a preliminary injunction necessitated a conclusion of no irreparable harm). It is true that "[w]here the question of 'direct competition remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction." *Neste Oil Oyl v. Dynamic Fuels, LLC*, No. 12–662–GMS, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013) (citing *SenoRx, Inc. v. Hologic, Inc.*, No. 173–LPS–CLB, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013), *Ever Win*,

2012 WL 4801890, at *7; *Belden Techs., Inc. v. Superior Essex Comm'ns LP*, No. 08–63–SLR, 2010 WL 3522327, at *3 n. 4 (D. Del. Sept 2, 2010)).  In this case, however, there is little doubt that Defendants' products directly compete with Plaintiffs' binary trigger products.  Jacobson Decl., ¶¶ 5-7.  For example, Defendants' website has directly compared their ITF trigger products to the binary trigger systems sold by Plaintiffs.  Dkt. No. 1, ¶ 26 and Exh. A ("The only regret I have Is spending $400.00 ON a Franklin BFS iii a couple of years ago. Installed [ITFD's] in about 20 minutes").  In addition, Defendants have even gone so far as to misappropriate Plaintiffs' registered trademarks to market and sell the accused products.  *Id.*; *see also* Jacobson Decl., ¶ 6.[4]

Rather, Plaintiffs' decision not to seek a preliminary injunction merely reflects their determination that Plaintiffs would likely be unable to satisfy the high burden of proof necessary to support a preliminary injunction without first obtaining discovery from Defendants.  *See Davol, Inc. v. Atrium Medical Corp.*, No. 12–958–GMS, 2013 WL 3013343, at *4 (D. Del. June 17, 2013) ("While the filing of such a motion may be indicative of prejudice in certain situations, there are a number of reasons that a plaintiff may choose to forego seeking injunctive relief that are wholly unrelated to the question of whether the parties are in direct competition.").  Plaintiffs' decision not to pursue such relief is therefore irrelevant to the issue of irreparable harm.  *See Cooper Notifications, Inc. v. Twitter, Inc.*, No. 09–865–LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010) (observing that the plaintiff's failure to move for a preliminary injunction "tells one nothing . . . about the potential irreparability of any harm from any infringement," given the plaintiff's acknowledgement that it could not meet the "high burden for such relief" without further discovery).

---

[4] The terms Binary® and Binary Firing System® are registered trademarks (USPTO Reg. Nos. 6272568 and 6293943, respectively) owned by Plaintiffs and are used to market Plaintiffs' firearm products that are capable of "pull-release" mode—i.e., firing one round on trigger pull and a second round on trigger release.  Jacobson Decl., ¶ 6 and Exh. 2.

**b.**     **The Imposition of a Stay Would Unduly Prejudice Plaintiffs' Ability to Litigate this Action.**

In addition to the economic burden a stay would impose on Plaintiffs, any delay of these proceedings will also unduly prejudice Plaintiffs' ability to obtain and preserve fact discovery necessary to litigate this action—particularly with regard to Defendants' alleged prior conception defenses.   Plaintiffs have repeatedly noted the need to obtain such discovery before witness' memories fade and critical testimony is lost.  *See*, *e.g.*, Dkt. No. 25, pp. 4-6, 10-12; Ratinoff Decl., ¶ 5, Exh. 2, at 5:9-6:14, 7:11-18.  This is particularly true in view of Defendants' flagrant disregard of the Court's instruction to provide the evidentiary basis for their prior derivation defense with Defendants' invalidity contentions.  Ratinoff Decl., ¶ 5, Exh. 2, at 17:14-18:5.  Further, despite their failure, Defendants continue to maintain the right to later assert this prior derivation defense as evidenced by Defendants' representations during the parties' September 1, 2021 meet and confer and Defense Counsel's statements in the Reply in support of the Defense Counsel's Motion to Withdraw filed on September 2, 2021.  Dkt. No. 49, p. 9 ("[I]n a meet and confer on September 1, 2021, Defendants reiterated the absence of documentary evidence to Plaintiffs and clarified that the assertions related to Mr. Gallagher's making of his binary trigger prior to 2019 would be supported by his sworn testimony.").

Accordingly, discovery for this testimony must commence as soon as practicable.  The imposition of a stay will cause irreparable harm by inhibiting Plaintiffs' ability to obtain and preserve such evidence for one or more years while increasing the likelihood that details regarding the alleged prior conception will be lost, forgotten, or inaccurately recalled at some future date.

12

### c. A Stay Would Provide Defendants with an Unfair Tactical Advantage.

Finally, Defendants' request for a stay pending reexamination is a mere dilatory tactic that does not warrant imposition of a stay. *See Innovative*, 2008 WL 4083012, at *3 (a stay should not issue where a party is using the reexamination process merely as a dilatory tactic or to achieve an improper tactical advantage). In general, "the less time that a party waits to file a motion to stay pending [review], the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 767 (E.D. Pa. 2014) (citing *Ever Win*, 902 F. Supp. 2d at 508). However, courts also recognize that a party's strategic decision to file an ex parte reexamination challenge (which has no estoppel effect) instead of an inter partes review that is "guaranteed to finally resolve at least some issues of validity," may justify denial of stay even where a defendant was diligent in seeking reexamination. *See Pro-Troll, Inc. v. Shortbus Flashers, LLC*, No. 16-CV-04062-VC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016). For example, the court in *Pro-Troll* explained:

> Shortbus Flashers had a choice of applying for ex parte reexamination or inter partes review. The choice of ex parte reexamination was strategically advantageous to Shortbus Flashers because the result of the reexamination will have no estoppel effect on Shortbus Flashers' arguments here. [Citations.] In other words, even if the PTO decided not to invalidate the patent after reexamination, Shortbus Flashers could continue to press an invalidity argument here. This is in contrast to inter partes review, which is "guaranteed to finally resolve at least some issues of validity." [Citations.] **Thus, the ex parte reexamination process is much less likely to advance the ball in this case.** Meanwhile, Pro-Troll, which is a direct competitor of Shortbus Flashers, would be prevented from asserting its patent rights in court for as long as two years, with Shortbus Flashers having effectively pressed the pause button on the litigation while hardly needing to lift a finger. This argues against a stay. [Citations.] **This is so even acknowledging that Shortbus Flashers was diligent in seeking ex parte reexamination shortly after this lawsuit was filed**.

*Id.* (emphasis added; citations omitted). As in *Pro-Troll*, Defendants had the option to file an inter partes review that would have narrowed the issues in dispute and would have allowed Defendants

13

to participate in the USPTO review process.  But instead, Defendants chose to file an ex parte reexamination and then raise invalidity challenges in this litigation based on the **same prior art** without any risk of estoppel.  The denial of a stay is thus warranted to prevent Defendants from gaining an unfair tactical advantage in view of Defendants' voluntary decision to not participate in the validity challenge before the USPTO.

Accordingly, the issuance of a stay would irreparably harm Plaintiffs—both from an economic perspective and with respect to the litigation of this action—and provide an unfair tactical advantage by forcing Plaintiffs to relitigate the same invalidity issues without any application of estoppel to Defendants' arguments.  As a result, the first factor weighs heavily against a stay.

### 2. There is Minimal Overlap of Issues Between the '461 Patent Reexamination and this Proceeding.

It is well established that there is no conflict between a reexamination and a federal patent case, as the USPTO and district courts apply different standards and may come to differing legal conclusions.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Slip Track Systems, Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341, 48 USPQ2d 1055 (Fed. Cir. 1998) (while stay of patent litigation may be appropriate in certain circumstances, where the copending actions are "neither duplicative nor dependent on one another, there is neither any need nor any justification" for a stay).  While true that any reexamination carries the potential for the simplification of issues (*see Arkema*, 2013 WL 5356844, at *6), the potential for irreparable harm to Plaintiffs far outweighs the slight chance that all claims will be cancelled.  *See Innovative*, 2008 WL 4083012,

at *4 (E.D. Pa. Aug. 28, 2008) ("Since 1981, 91% of all ex parte reexamination requests have been granted, but only 12% of those requested have resulted in decisions cancelling all claims.").[5]

Aside from the slight chance that all claims will be fully cancelled, there is very little (if any) overlap between the reexamination and this proceeding. Notably, the reexamination is limited to the specific issue of whether the Hawbaker and Horch references render the invention of the '461 Patent obvious under 35 U.S.C. § 103. As evidenced by the preliminary invalidity contentions served by Defendants' on August 5, 2021, Defendants' have not asserted that these references—either separately or in combination—render the '461 Patent invalid under Sections 102 or 103. Dkt. No. 49-1, Exh. B, at pp. 1-2 ("Defendants' Preliminary Invalidity Contentions").[6] Rather, Defendants abandoned their reliance on those references, and did not cite to any new references. As a result, their sole invalidity argument is based upon 35 U.S.C. § 112, which is wholly outside the scope of the reexamination proceeding. *See* Dkt. No. 49-1, Exh. B; *see Ever Win.*, 902 F. Supp. 2d at 507 (explaining that reexamination will not address defendant's asserted § 112 defenses and a significant portion of the case will remain unilluminated by the USPTO's review).

Further, Defendants' arguments regarding the potential simplification of issues misconstrue the effect of the USPTO's final rejection. Contrary to Defendants' assertions, the August 20, 2021 final rejection is not "final" in the sense that it may only be overcome by a

---

[5] The most recent data from the USPTO shows that only 14% of reexaminations result in the cancellation of all claims. *See* USPTO: Ex Parte Reexamination Filing Data, (available at: https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up_21Q1.pdf ).

[6] Defendants' stated position that the failure to include these grounds in their invalidity contentions did not waive their right to assert these defenses directly contradicts the Court's rule that parties may only amend their contentions if "the amendment is based on material identified after those preliminary contentions were served." *See* Model Order Governing Proceedings, (available at: https://www.paed.uscourts.gov/documents/standord/2020-05-06%20Order%20Governing%20Proceedings%20-%20Patent%20Cases.pdf).

successful appeal to the Patent Trial and Appeals Board ("PTAB"), nor does it suggest that any of the '461 Patent claims are unenforceable.  Pursuant to 37 C.F.R. § 1.116, and as evidenced by the August 20, 2021 Office Action's express provision of a two-month period for response, Plaintiffs may respond to the final rejection and propose additional amendments to any rejected claims as appropriate.  *See* 37 C.F.R. § 1.116; Dkt. No. 45-2, Exh. D, at p. 19.  Only after such a response has been made and upon a further determination by the patent examiner that the claims still are not in condition for reissue can it be correctly stated that an appeal to the PTAB is required to overcome the rejection.  Thus, Defendants' assertion that "[a]bsent a successful appeal, this [August 20, 2021] final rejection will moot all of the issues in this case" is contrary to law and the express statements by the examiner in the final rejection.  *See* Dkt. No. 45-1, p. 7.

As explained above, the reexamination has minimal potential to simplify the issues in this case, and even then only at the expense of placing the suit on hold for another year or more.  The high probability of irreparable harm to Plaintiffs far outweighs the slight chance that all claims will ultimately be cancelled.  Even if some of the claims are amended, the time and expense of adjusting expert reports and motions once all discovery is completed and the case is ready for trial is minor in light of the potential harm.  Thus, the second factor does not favor a stay.  **At best**, this factor is neutral.  *See Vehicle IP*, 2010 WL 4823393, at *2 (held that "[b]ecause the issues left for trial do not completely overlap those that are to be resolved upon reexamination, yet each of the claims of the patents in suit are under reexamination, this factor neither favors nor disfavors a stay").

### 3. The Issuance of a Stay Will Not Significantly Increase Judicial Efficiency for Either the Parties or the Court.

The final factor a court considers is the stage of the litigation—i.e., whether the issuance of a stay will "advance judicial efficiency and maximize the likelihood that neither the Court nor

the parties expend their assets addressing invalid claims." *Arkema*, 2013 WL 5356844, at *7 (quoting *Neste Oil Oyj*, 2013 WL 424754, at *5; internal quotations, citations omitted). For example, in granting a stay, the court in *Arkema* noted that no discovery had yet been conducted on two of the patents subject to reexamination, the parties had not begun claim construction, and dates had not been set for a *Markman* hearing, submission of disposition motions, or for trial. *Id*. By contrast, the parties here have already exchanged their infringement and invalidity contentions and the claim construction process is well underway.

On September 2, 2021, the parties exchanged proposed claim constructions and, by September 16, 2021, the parties will have exchanged extrinsic evidence and any expert testimony as well as final constructions regarding any disputed claim terms. Ratinoff Decl., ¶¶ 14-15. In short, the parties have already invested significant time and resources in this litigation. *See Innovative*, 2008 WL 4083012, at *3 (found that substantial time and resources already invested in the litigation weighs in favor of a stay). Moreover, as Defendants concede, trial is likely to commence as early as February 2023 (*see* Dkt. No. 45-1, at p. 3)—i.e., before the May 2023 estimated conclusion of the reexamination proceedings (not including any necessary appeals). Thus, in view of the estimated duration of the reexamination, as well as the current case schedule, a stay is unlikely to provide significant benefit to the Court and parties.

Finally, thus far the parties have been able to significantly narrow the scope of issues for judicial determination including the terms for claim construction (on which the parties appear to largely agree) and invalidity arguments (which Defendants have narrowed to only include indefiniteness and written description arguments raised under 35 U.S.C. § 112). *See* Ratinoff Decl. ¶¶ 14-15, Exhs. 7A, 7B. Further, it appears that the reexamination will have little effect (if any) on the claim terms proposed by the parties. *Id*. In contrast to many patent cases, the technology

at issue is not particularly complex and the questions concerning validity, infringement, and damages are unlikely to require extensive discovery or expert testimony. Consequently, the marginal benefit that a stay may provide to Court and the parties is far outweighed by the harm that Plaintiffs would sustain should the case be stayed for multiple years while the reexamination is pending.

## IV.    CONCLUSION

For these reasons, the irreparable harm that Plaintiffs will sustain clearly outweigh the marginal benefits that a stay may provide and the Court should deny the Motion. At a minimum, any consideration of a stay should be delayed until the parties have completed claim construction proceedings and Plaintiffs have had a full and fair opportunity to obtain and preserve Defendants' testimony regarding their prior conception allegations. Finally, if the Court is so inclined as to grant the stay, the Court should deny Defense Counsel's Motion to Withdraw (Dkt. No. 39) because such a stay would provide sufficient time for Defendants and their counsel to resolve their differences.

**ARMSTRONG TEASDALE LLP**

*/s/ Mark W. Halderman*
By: Mark W. Halderman, PA Bar No. 307229
mhalderman@atllp.com
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103

a n d

Jeffrey M. Ratinoff, CA Bar No. 197241
(*admitted pro hac vice*)
jratinoff@hopkinscarley.com
Robert K. Jain, CA Bar No. 309728
(*pro hac vice forthcoming*)
rjain@hopkinscarley.com

**HOPKINS & CARLEY,**
**A Law Corporation**
The Letitia Building
70 South First Street
San Jose, CA 95113
Telephone: (408) 286-9800

*Attorneys for Plaintiffs Franklin Armory*
*Holdings, Inc. and Franklin Armory, Inc.*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Mark W. Halderman, hereby certify that on September 8, 2021, I caused a true and correct copies of *Plaintiffs' Opposition to Defendants' Motion to Stay Litigation* to be sent electronically to all counsel of record via the ECF system, and that the document is available for viewing and downloading from the ECF system.

*/s/ Mark W. Halderman*
By: Mark W. Halderman, PA Bar No.
307229 mhalderman@atllp.com