# EXHIBIT 2

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA

                                      .
FRANKLIN ARMORY HOLDINGS,             .
INC., et al.,                         .   Case No. 2:20-cv-05681-CFK
                                      .
              Plaintiffs,             .
     vs.                              .   U.S. Courthouse
                                      .   601 Market Street
ROBERT JOSEPH GALLAGHER, et al.,.         Philadelphia, PA 19106
                                      .
              Defendants.             .   Thursday, June 17, 2021
                                      .   1:03 p.m.
. . . . . . . . . . . . . . . . .
```

            TRANSCRIPT OF RULE 16 PRETRIAL CONFERENCE
    BEFORE THE HONORABLE CHAD F. KENNEY (VIA VIDEOCONFERENCE)
              UNITED STATES DISTRICT COURT JUDGE

TELEPHONIC APPEARANCES:

For the Plaintiffs:        Hopkins & Carley
                           By:  JEFFREY M. RATINOFF, ESQ.
                           70 South First Street
                           San Jose, CA 95113
                           (408) 286-9800

                           Armstrong Teasdale, LLP
                           By:  MARK W. HALDERMAN, ESQ.
                           2005 Market Street, 29th Floor
                           Philadelphia, PA 19103
                           (267) 780-2028

For the Defendants:        Archer & Greiner, PC
                           By:  RICHARD P. GILLY, ESQ.
                           Three Logan Square
                           1717 Arch Street, Suite 3500
                           Philadelphia, PA 19103
                           (215) 246-3112

                           By:  TREVOR J. COONEY, ESQ.
                           One Centennial Square
                           Haddonfield, NJ 08033
                           (856) 795-2121

Audio Operator:            Carl Hauger, ESR

TRANSCRIBED BY:            Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com

          Proceedings recorded by electronic sound
    recording, transcript produced by transcription service.

1      (Proceedings commence at 1:03 p.m.)

2           THE COURT:  All right.  We're on the record in --

3           UNIDENTIFIED:  Good afternoon.

4           THE COURT:  Good afternoon.

5           MR. RATINOFF:  Good afternoon.

6           THE COURT:  Court reporter ready?  Okay.  Good.

7           So this is Franklin Armory case.  It's 20-5681.  And

8  we have <u>Franklin Armory vs. Gallagher</u>.  So who do we have for

9  Franklin Armory?

10          MR. RATINOFF:  Your Honor, it's Jeffrey Ratinoff

11 appearing on behalf of plaintiffs.

12          MR. HALDERMAN:  And I'm Mark Halderman, also

13 appearing on behalf of plaintiffs.

14          THE COURT:  All right.  And who do we have for

15 Mr. Gallagher?

16          MR. GILLY:  Richard Gilly and my co-counsel, Trevor

17 Cooney, on behalf of Mr. Gallagher.

18          THE COURT:  Is that you, Trevor?

19          MR. COONEY:  Afternoon, Your Honor.  Yes.

20          THE COURT:  Good afternoon.

21          All right.  So we have the Rule 16.  And I went

22 through -- I went through the 26(f) reports, so thank you.  And

23 so where do we want to start off?  Where do we want to start

24 off with the pretrial conference?

25          MR. RATINOFF:  Your Honor, I think we -- we have

1  actually reached agreements on most points.  I think there's

2  really two points of disagreement that would probably be the

3  best to focus on.  And one is, we actually have agreed to a

4  tentative case schedule.   The issue is whether that schedule

5  gets put into place.

6          Defendants have indicated for several months now that

7  they wish to stay the case based on the pending reexamination.

8  Our position is that this case doesn't warrant a stay.  But if

9  they --

10          THE COURT:  In terms of that -- I looked at that.  My

11  inclination -- and it's always my inclination.  I don't -- and

12  it's just my instinct and how I operate.  I'm very reluctant to

13  stay any case.  Once I have it, I move forward with the case.

14          And I looked at the -- some of the case law in this

15  area and the factors in this area.  Right now where I am is I'm

16  weighing in on the factors that would indicate to me that I

17  would like to move forward with our case and get to the

18  construction hearing and see how things play out from there.

19          In terms of paternity leave, I wish when I was having

20  my children I would have been given the opportunity to take 90

21  days of paternity -- though maybe not.  I -- be careful what

22  you ask for.

23          MR. RATINOFF:  I took a short one, Your Honor, for

24  (indiscernible) --

25          THE COURT:  I -- well, some days with my young

4

1  children, I thought, I can't wait to get back to work.  So

2  maybe (indiscernible).

3          MR. RATINOFF:  (Indiscernible).

4          THE COURT:  That's where I am.  I understand --

5  I --from reading the 26(f), the defendants' point of view in

6  terms of some of the things it may alter.  But I think I

7  would -- I'd rather that we start to frame this case from a

8  court point of view and then see what we have to change, if

9  anything, coming out of the reexamination.

10         So that would leave us then, I guess, with the

11  discovery issue.  And plaintiffs' -- asking for the informal

12  discovery and the disclosures coming out right after -- right

13  away.  Is that what you're trying to do?

14         MR. RATINOFF:  Yes, Your Honor.  The issue is, under

15  the standard patent order that Your Honor has adopted, the

16  invalidity contentions don't really require the disclosure of

17  any evidence relating to their prior conception defense.  So

18  our position is -- and maybe it's more efficient for us simply

19  to propound a limited set of document requests and

20  interrogatories -- is to kind of get to the bottom of what the

21  evidentiary basis is for that assertion.

22         There's going to be third parties, potentially,

23  that -- and I -- and I'm not suggesting anything to the

24  contrary that counsel will -- or defense will preserve

25  evidence.  But certainly, third parties wouldn't be within

1  their control to do so.  So we would like to at least get some

2  subpoenas out to those alleged purchasers of the product just

3  to preserve that evidence.

4           And we understand general discovery wouldn't occur

5  until after Markman.  So that's really what we're aiming at

6  is --

7           THE COURT:  Well --

8           MR. RATINOFF:  -- just to make --

9           THE COURT:  Well, let me focus that for a minute

10  before we get to that topic, before I ask the defendants' point

11  of view on that.  If you look at the scheduling order, right,

12  seven weeks after the R16 in terms of the defendant serving the

13  preliminary invalidity contentions.  And in that, the defendant

14  is also to -- required to produce all prior art referenced in

15  the invalidity contention and technical documents sufficient to

16  show the operation of the accused products and summary of

17  annual sales information for accused product for the two

18  proceeding years filing -- of filing a complaint.

19           So I -- my understanding, at least from what I'm

20  reading from what the defendant is saying, is part of the

21  invalidity contentions is that, hey, as far as prior art is

22  concerned, we -- since 2011, we were -- we had these things and

23  were working on them.

24           So what's your -- what is the defendants' point of

25  view in terms of at least producing information about the

1  development in 2011 -- or the alleged development in 2011 of
2  the binary trigger?

3          MR. GILLY:  I mean, our view is that that would be
4  appropriate, and we could include it.  Our view still is,
5  though, that we really ought to wait until -- to see if this
6  untested patent survives the reexamine.  But Your Honor's
7  already, you know, indicated his preference on that, so I don't
8  want to beat a dead horse.

9          THE COURT:  Well, I'm glad that -- I'm glad of that,
10  because I have many attorneys that beat the dead horse
11  (indiscernible).  So it's a dead horse that's been beaten a
12  lot, I -- I'll tell you.

13          So, I mean, okay.  So good.  So that -- I think that
14  covers that.  I don't really want to get beyond the claims
15  construction focus, because then that makes for a very messy
16  record, and we go all over the place.  I really want to get to
17  the narrowing of the claims construction issues as quickly as
18  possible.

19          Certainly, the third parties might go away, but I
20  would think that the information that counsel has told his
21  client to preserve will not go away in terms of who he dealt
22  with and the documents, at least, the client has.  So I think
23  that'll be enough.  Certainly, that'll be enough to locate
24  those third parties and jog their recollections as to any
25  information that you might want to discover from them.

1          So that -- that's what I want to stick with at this

2  point.  So where does that --

3          MR. RATINOFF:  Your Honor?

4          THE COURT:  Yeah?

5          MR. GILLY:  That's fine, Your Honor.

6          MR. RATINOFF:  The only thing I would note is the

7  current order only dates back to 2018, so just to clarify for

8  the record that they'll -- are agreeing to go back to 2011 or

9  whenever the alleged first sale of the prior -- the alleged

10  prior --

11          THE COURT:  Well, I think the order would be two

12  years for the financials.  I'm -- which I'm going to keep that.

13  I'm more interested in terms of the invalidity contentions and

14  the prior art and the technical documents and their allegations

15  that I've been -- we've been doing this since 2011.  So to

16  produce all that, which you were -- which is really what you're

17  looking for at this stage.

18          MR. RATINOFF:  That's correct.

19          THE COURT:  I know that you think, well, let's do

20  some discovery; we can get an early settlement.  I just don't

21  see plaintiffs' counsel -- or defense counsel looking for an

22  early settlement in this case.  Having said that, not looking

23  for an early settlement, I'm certainly being very, very aware

24  of the potential of delaying this case, although counsel

25  doesn't seem to be the type of individual that would be just

8

1  looking to delay a case and not get us to where we need to be

2  as quickly as possible.

3          So that -- I -- where does that leave us then in

4  terms of handling issues that have -- had -- you've brought up

5  in the -- in terms of the 26(f).  The 90 days I'm fine with,

6  with the paternity leave.  Counsel seem to be fine with that.

7          God bless you on that one.  I guess you're going to

8  put the kids in daycare for the three -- daycare for three

9  months, right?  Is that how that's going to work?

10          MR. RATINOFF:  Well, it's not -- it's my associate's

11  first child, so we want to give him all the time to enjoy

12  that --

13          THE COURT:  Well, you have to give the associate all

14  the time the associate can have, because the associate's going

15  to do all the work, so -- you know?

16          MR. RATINOFF:  Oh, we share it.  I appreciate that,

17  Your Honor.

18          THE COURT:  Oh, you share.  You share 90 percent of

19  the 10 percent that he leaves for you, right?

20          So then what does that leave us with?

21          MR. RATINOFF:  One of the other issues that -- I

22  don't think this is really an area of disagreement, but we

23  would ask for a clarification or consideration, is for a

24  protective order in the case.  We had used -- we were using the

25  Northern District of California's patent protective order.  I

1 don't know if that's something Your Honor would be okay with,

2 with, you know, adopting --

3          THE COURT:  That's fine with me.  Once you say the

4 Northern District of California, right?  I mean, that's like

5 saying the Supreme Court of the United States.  California

6 Northern District.  No.  That's fine.  Northern District is

7 fine, if you want to use that --

8          MR. RATINOFF:  Okay.

9          THE COURT:  -- and the parties agree.  That's the

10 key.  And just have language in there to the effect of -- that

11 I have in my guidelines about protective orders.  All right?

12          MR. RATINOFF:  Yes, Your Honor.  And then as --

13          THE COURT:  What else?

14          MR. RATINOFF:  Filing matters under seal, there's

15 really no specific rules on that in the local rules that I saw.

16 I don't know if Your Honor would like us to put some specifics

17 in the protective order --

18          THE COURT:  I don't like -- first of all, I don't

19 like anything filed under seal.  So when we're filing it under

20 seal, we have to sort of do that on a piecemeal fashion and why

21 we're doing it.  Okay?  And, obviously, both sides agreeing.

22 It creates its own technological problems in terms of who can

23 see it, who can't see it, even amongst the parties.

24          So I think -- you know, again, I'm pretty liberal in

25 that when people agree -- when the attorneys agree.  So I just

1 think that we should do that one document or one series of

2 documents at a time, because then you end up with things under

3 seal that really make no sense whatsoever to have under seal.

4 So in other words --

5          MR. RATINOFF:  (Indiscernible).

6          THE COURT:  -- you have a patent, all the patent

7 filings, and then you file, and it's under seal.  It's like,

8 well, why -- why did we file this under seal, you know?

9          So what else do you have?

10          MR. RATINOFF:  Well, I think we already kind of

11 covered the settlement, Your Honor.  There's not going to be

12 any discussion at this point.

13          We also just want to let you know we have an ESI

14 order that we came to an agreement on, so we'll be submitting

15 that for Your Honor's signature.  We were just waiting to see

16 what would happen with the state issue and discovery issue.

17          THE COURT:  Yeah.  Here's the only curve ball that I

18 have, looking at the standing order, and that's where it comes

19 to the -- I don't want us spending time on theoretical claims.

20 In other words, I don't want to say, okay, I want to construe a

21 claim and then say, okay, well, that was nice, why did you

22 spend all that time construing it, because it has nothing to do

23 with the merits of the case.

24          So the one thing in terms of claims construction when

25 you're looking at the submissions, what I need is -- what I do

1  need is -- as part of that, the impact -- the impact that the

2  construction's going to have on the merits.  So I -- where is

3  that in the scheduling order?  I think it's -- I made a note of

4  it.  So that's the only area where I don't think it was clear,

5  and it's not clear in the standing order.  It just has a

6  submission of the construction.

7          Does anybody have any questions on that?

8          MR. GILLY:  Well, Your Honor, I mean, to that point,

9  the plaintiffs did submit preliminary infringement contentions.

10 Are you talking about those, or are you talking about claim

11 construction?

12         THE COURT:  Claims construction.

13         MR. GILLY:  Oh, okay.

14         THE COURT:  So when I go -- and I don't want to

15 construe claims that aren't ultimately going to have an impact

16 on the merits.  So I need a statement as to how this is going

17 to have an -- it would have an impact on the merits after it's

18 been construed.

19         MR. RATINOFF:  Your Honor, would you like that in a

20 joint submissions, or is that something you would expect to be

21 included in the actual briefs?

22         THE COURT:  No.  I would want it in the joint

23 submission.

24     (Court and clerk confer)

25         MR. RATINOFF:  Twenty weeks after Rule 16.

12

1          THE COURT:  Yeah.  The joint claims construction.  So

2   for that, I mean, the parties, obviously, are going to either

3   say, yes, this is -- one or -- these -- this is one that I want

4   to do.  And somebody might have five.  The other one have five.

5   But each one of them, somebody has to come forth and say, you

6   know, this is the significance of this and -- on the merits.

7   All right?

8          MR. RATINOFF:  Yes, Your Honor.

9          THE COURT:  Okay.  And that'll avoid -- that -- I

10  think that'll help us stay focused.  Like I said, I'm going to

11  be very, very, very cautious about any unnecessary delay on

12  this.  I want to get -- if we schedule the hearing, I want to

13  see if we can get to the hearing on the hearing date.  All

14  right?

15         It doesn't seem all that complicated in terms of

16  technology until you start looking at what's been filed.  And

17  then you say things that don't appear complicated are

18  complicated.

19         MR. RATINOFF:  They are.

20         THE COURT:  So is there anything else at this point?

21  I spent a lot of time preparing for this, believe it or not.

22         MR. RATINOFF:  Your Honor, there was only one new

23  issue that came up -- or --

24         THE COURT:  Uh-oh.

25         MR. RATINOFF:  -- that I'd like to bring to the

1   Court's attention.

2          THE COURT:  Uh-oh.  New issues already?

3          MR. RATINOFF:  Well, Your -- after Your Honor's order

4   denying our motion to strike the inequitable conduct defense,

5   you know, our -- we anticipate that's going to increase the

6   scope of the discovery after Markman, as well as bring up the

7   issue of having to bifurcate the proceedings since normally

8   inequitable conduct is a equitable remedy that's determined by

9   the Court versus a jury.

10         You know, we still believe there is a -- a summary

11  judgment motion could probably dispose of this pretty quickly.

12  And we'd ask that the Court extend the 40 pages of opening

13  brief limit to -- in our anticipated motion for summary

14  judgment on that defense.

15         THE COURT:  Okay.  So that's a nonissue.  And I'm --

16  I hope they are the type of issues that we -- get brought up

17  during this litigation.  So I'm always more than willing to

18  extend the briefing for -- the number of pages for a good

19  reason.  But we can cross that bridge when we get to it.

20         Like you said, it may be even -- at the summary

21  stage, discovery might be enough that counsel may even say, you

22  know, I'm not going to push that.  But I just want to allow

23  counsel, at least, to preserve that and take a look at

24  discovery to see if there's a basis to moving forward with it.

25  Typically, counsel will look at it, and they're not going to

1  bother a judge with reviewing something where they don't think

2  they have the factual basis to move forward.

3         All right?  So that -- that's good.

4         MR. RATINOFF:  Understood, Your Honor.  Thank you.  I

5  just want to be careful, because most of the allegations are

6  impugning the reputation of another attorney who practices --

7  has been practicing before the PTO for, you know, 20-plus

8  years.  So we want to (indiscernible) --

9         THE COURT:  Yeah.  I don't see impugning.  I didn't

10 read it as impugning.  Attorneys work vis-a-vis their clients.

11 Sometimes it's more of a did a client do this, and did a client

12 give you this, or did your client do that.

13        So I never practiced in front of the patent people,

14 so I didn't realize that that was impugning you.  So now that

15 you've told me that you've been impugned, I -- I didn't realize

16 you were impugned until you let me know that, so --

17        MR. RATINOFF:  No, not me, Your Honor.  The

18 prosecuting attorney.

19        THE COURT:  Yeah.  Yeah.  Well, like I said, I didn't

20 know until you told me that you felt impugned.  So now that you

21 told me, I guess you're going to -- you're going to be brought

22 in as a party against yourself.  I had no idea you were

23 impugned by those allegations.  It just seems --

24        MR. RATINOFF:  No, Your Honor.  Mr. Langels

25 (phonetic), who's the attorney who was responsible for

1  prosecuting the patent.  That was not me, Your Honor.

2            THE COURT:  All right.  All right.  Yeah.  I didn't

3  look at it that way.  But do attorneys prosecute patents and

4  then put in front of the -- do they do that sometimes?  Do they

5  hold back information?

6            MR. GILLY:  Yes, Your Honor.  That is --

7            THE COURT:  They do do that?

8            MR. GILLY:  That is the -- yes.

9            THE COURT:  It's a shocking thing to hear that that

10 happens.  Believe it or not, I get cases in which attorneys

11 cite cases to me all the time that they don't stand for the

12 proposition that they allege they stand for.  That's why I have

13 law clerks who actually read the cases and tell me, yeah, it

14 doesn't stand for what it stands for.  But that's actually

15 becoming a common practice now.  You know, it's really

16 startling that that has occurred.

17            All right.  So with that, yeah, we'll allow some

18 discovery on that and see where that goes at that time.  But

19 again, I monitor my cases very closely.  So if issues come up,

20 you have to let me know right away, and I'll try to weigh in

21 right away in terms of how I see it and how we can work our way

22 through it.  All right?  Does that sound fair enough?

23            MR. GILLY:  Yes.  Thank you, Your Honor.

24            MR. RATINOFF:  Thank you, Your Honor.

25            THE COURT:  Are people getting on planes in Los

16

1  Angeles?  I'm just wondering.  I know that -- are people

2  actually getting on planes in Los Angeles?  Are they allowed to

3  fly out of state?  How is that working there now?

4            MR. RATINOFF:  Well, California --

5            THE COURT:  (Indiscernible).

6            MR. RATINOFF:  I'm actually in San Jose, Your Honor.

7  But California opened up, you know, officially, I believe, a

8  couple days ago.

9            THE COURT:  Uh-huh.

10           MR. RATINOFF:  So but there are still restrictions as

11 far as traveling to Hawaii and -- but I believe, you know,

12 following CDC guidelines, you can get on a plane now, so --

13           THE COURT:  Oh.  Can you fly into Philadelphia?

14           MR. RATINOFF:  I think next time there's an

15 opportunity to, I will be able to, Your Honor.

16           THE COURT:  All right.  Well, I'm going to look for

17 an opportunity, so -- is there anything else?  I just rather

18 much -- rather be in a courtroom.  I guess I just get a better

19 feel for attorneys, the cases and where we're going.  But the

20 way that you -- the -- that counsel has worked this out, and

21 the way they have worked on it and sort of agreed to where

22 we're going, I'm glad I did it by video.  You almost deserve it

23 the way that you were able to work together professionally.

24           Have any of you worked together before on these

25 cases?

1          MR. RATINOFF:  No.

2          MR. GILLY:  No, Your Honor.

3          MR. COONEY:  No, Your Honor.

4          THE COURT:  So it's the first -- so we're still at

5    the sort of feeling out stage?  All right.

6          So in terms of that then, there may be some

7    mid-course corrections that have to take place.  But let's do

8    that very early on.  Because somebody has an understanding, and

9    then the understanding doesn't seem to be what the other side

10   understood.  Okay?

11         MR. COONEY:  Your Honor, if I could just raise one

12   issue.  I just wanted to --

13         THE COURT:  (Indiscernible).  Go ahead.

14         MR. COONEY:  I just wanted to make sure I understood

15   the benefit of -- so after our discussion, I believe we are

16   still then just following the default schedule in your standard

17   order governing patent cases?

18         THE COURT:  Yeah.

19         MR. COONEY:  I know there was some discussion between

20   counsel before the conference on some tweaks, but I -- it

21   sounds like we still ended up at the same standard order.

22         THE COURT:  We ended up at the same standard order.

23   The 90 days we're going to work with.

24         MR. COONEY:  Yep.  Yes.

25         THE COURT:  And discovery we want to stick with, my

1  understanding is.  But, again, with the invalidity contentions,
2  defendant is going to come through with the prior art including
3  the 2011 development through 2015 of his own client on accused
4  product.  And so that's a little bit of a specification which I
5  think falls within the spirit of that.
6          And then the only -- it's not really a changing --
7  that's not changing the order.  But then a clarification in
8  terms of claims construction, that if you're putting forth the
9  claims, you have -- in putting forth the claims statement as to
10 how constructing that claim will affect the merits of the case.
11         Fair enough?
12         MR. COONEY:  Very good.  Thank you.  Yes.  Very good.
13 Just wanted to confirm.
14         THE COURT:  All right.  All right.  Anything else,
15 counsel?
16         MR. GILLY:  No, Your Honor.
17         MR. RATINOFF:  I believe that's -- from our end, the
18 plaintiffs' end, that's it, Your Honor.  Thank you.
19         THE COURT:  All right.
20         MR. GILLY:  Trevor?  Trevor?
21         THE COURT:  Okay.
22         MR. COONEY:  Yeah.  Nothing else.  Thank you.
23         THE COURT:  All right.  Great.
24         MR. GILLY:  All set, Your Honor.
25         THE COURT:  (Indiscernible).

1          MR. RATINOFF:  Thank you, Your Honor.

2          THE COURT:  All right.

3          MR. RATINOFF:  I plan to be there in person for claim

4    construction, Your Honor.

5          THE COURT:  Oh, good.  Good.  That'll be good.

6    That'll be helpful to your side, actually, claims construction.

7    But hopefully we'll get it settled before then, don't you

8    think?  I see some --

9          MR. RATINOFF:  (Indiscernible) --

10          THE COURT:  I see some pursing of lips up there, so

11   we'll see you at claims construction.  Hopefully, not before

12   then, though, right?

13          MR. RATINOFF:  I wouldn't see an opportunity for

14   that, but we'd certainly welcome it if it comes up.

15          THE COURT:  All right.  All right.  Well, when the

16   Phillies -- Dodgers are town, going to lose to the Phillies,

17   maybe you can come in for that.

18          MR. RATINOFF:  I'm a Giants fan, Your Honor, so I'd

19   be happy to see the Dodgers lose.

20          THE COURT:  All right.  Take care, everybody.  Thank

21   you.

22          MR. GILLY:  Thank you.

23          MR. COONEY:  Thank you, Your Honor.  Take care.

24          MR. HALDERMAN:  All right.  Thank you, Your Honor.

25      (Proceedings concluded at 1:26 p.m.)

20

1                        **C E R T I F I C A T I O N**

2

3              I, Liesl Springer, court-approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter, and to the best of our ability.

7

8

9    _____

10   LIESL SPRINGER, AAERT NO. 685      DATE:  August 11, 2021

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

